IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

HYATT EQUITIES, LLC,

                            Plaintiff,

        v.

CAPITAL ONE FINANCIAL CORPORATION
D/B/A CAPITAL ONE BANK D/B/A
CAPITAL ONE AND "XYZ CORP."

                            Defendant.

Case No. 1:20-cv-05299-GBD-KNF

**CAPITAL ONE, N.A.'s MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
(212) 801-9200 (telephone)
(212) 801-6400 (facsimile)

*Attorneys for Defendant Capital One N.A.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 4

FACTUAL BACKGROUND .................................................................................... 5

    I.      ALLEGATIONS OF THE COMPLAINT ............................................. 5
    II.     LEASE PROVISIONS GOVERNING PLAINTIFF'S ALLEGATIONS ............ 8

ARGUMENT ............................................................................................................ 9

    I.      APPLICABLE LEGAL STANDARD ................................................... 9
    II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF
           LEASE ...................................................................................... 10

           A.    Landlord's Default Notice is Materially Defective .................. 11
                and Therefore Invalid Under New York Law......................... 11
           B.    The Breach Claim is Refuted by the Plain Language of the Lease ......... 13
           C.    The Statute of Limitations Bars Plaintiff's Rent Claim............................ 15
           D.    Even if the Fixed Rent or Tax Equivalency Payment Changed,
                Landlord Fails to Allege it Gave Capital One Any Notice, As
                Required by the Lease ........................................................ 17

    II.     EVEN ASSUMING BREACH, TERMINATING THE LEASE IS NOT
           JUSTIFIED UNDER NEW YORK LAW SINCE ANY ALLEGED
           BREACH IS IMMATERIAL ............................................................. 18
    III.    LANDLORD'S REMAINING CLAIMS SHOULD LIKEWISE BE
           DISMISSED ............................................................................... 19

CONCLUSION.......................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................9

*Cityside Archives, Ltd. v. Weiss*,
  No. 1:18-CV-5077-GHW, 2020 WL 3972310 (S.D.N.Y. July 13, 2020) ................................6

*DPC New York, Inc. v. Scottsdale Ins. Co.*,
  No. 19 CIV. 1743 (PGG), 2020 WL 2555241 (S.D.N.Y. May 19, 2020) ................................6

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007)...........................................................................................9

*Frontline Processing Corp. v. Merrick Bank Corp.*,
  No. 13 CIV. 3956, 2014 WL 837050 (S.D.N.Y. Mar. 3, 2014) ............................................10

*Iqbal v. Hasty*,
  490 F.3d 143 (2d Cir. 2007)......................................................................................9, 10

*J.C. Penney Corp., Inc. v Carousel Ctr. Co., L.P.*
  635 F Supp. 2d. 126 (N.D.N.Y. 2008)...........................................................................16

*Jiajia Luo v. Sogou, Inc.*,
  No. 19-CV-230 (LJL), 2020 WL 3051019 (S.D.N.Y. June 8, 2020) .....................................6

*Lopez v. Adidas Am., Inc.*,
  No. 19-CV-7631 (LJL), 2020 WL 2539116 (S.D.N.Y. May 19, 2020) ..................................6

*Mohawk v. William Floyd Sch. Dist.*,
  2014 U.S. Dist. LEXIS 27621 (E.D.N.Y. 2014)...........................................................9, 10

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
  830 F.3d 152 (2d Cir. 2016).........................................................................................14

*Owolabi v Bank of Am., NA*,
  2019 US Dist. LEXIS 19368 (S.D.N.Y. Feb. 6, 2019) .......................................................14

*Perks v. TD Bank, N.A.*,
  No. 18-CV-11176 (VEC), 2020 WL 1272246 (S.D.N.Y. Mar. 17, 2020) ..............................14

*In re Royal Yarn Dyeing Corp.*,
  114 B.R. 852 (Bankr. E.D.N.Y. 1990)...........................................................................18

*Shetty v. Trivago N.V.*,
  796 F. App'x 31 (2d Cir. 2019) ......................................................................................6

*Sinco, Inc. v. Metro-N. Commuter R. Co.*,
  133 F. Supp. 2d 308 (S.D.N.Y. 2001)...........................................................................18

**State Cases**

*200 W. 58th St., LLC v Little Egypt Corp.*,
    7 Misc 3d 1017[A], 2005 NY Slip Op 50640[U] (Civ. Ct., New York Cnty.
    2005) ....................................................................................................................11

*496 Broadway Realty v Kyung Sik Kim*,
    18 Misc. 3d 1119[A], 856 N.Y.S.2d 498, 2008 NY Slip Op 50139[U] (Civ.
    Ct. New York Cnty. 2008) ............................................................................11, 13

*542 Holding Corp. v Prince Fashions, Inc.*,
    46 A.D.3d 309 (1st Dep't 2007) ..................................................................11, 12

*Benham v eCommission Solutions, LLC*,
    118 AD3d 605 (1st Dep't 2014) .........................................................................19

*Berkowitz v Christie's Inc.*,
    2017 N.Y. Slip Op 32246[U] (Sup. Ct., New York Cnty. 2017)...........................19

*BP 510 Madison LLC v Prosiris Capital Mgt. LLC*,
    65 Misc. 3d 1222[A], 2019 NY Slip Op 51782[U] (Civ. Ct., New York Cnty.
    2019) ....................................................................................................................11

*Fifty States Mgt. Corp. v Pioneer Auto Parks, Inc.*,
    46 N.Y.2d 573 (1979) .........................................................................................18

*Filmtrucks, Inc. v Express Indus. & Term. Corp.*,
    127 A.D.2d 509 (1st Dep't 1987) .......................................................................11

*Goldman Copeland Assoc. v Goodstein Bros. & Co.*
    268 A.D.2d 370 (1st Dep't 2000) ..................................................................16, 17

*Harar Realty Corp. v. Michlin & Hill, Inc.*,
    86 A.D.2d 182 (1982) .........................................................................................18

*Jeffers v. American Univ. of Antigua*,
    125 A.D.3d 440 (1st Dep't 2015) .......................................................................19

*K-Bay Plaza, LLC v Kmart Corp.*,
    132 A.D.3d 584 (1st Dep't 2015) .............................................................15, 16, 17

*Kaufmann's Carousel, Inc. v Carousel Ctr. Co. LP*
    87 A.D.3d 1343 (4th Dep't 2011) .......................................................................17

*Metropolitan Transp. Auth. v Cosmopolitan Aviation Corp.*,
    99 A.D.2d 767 (2d Dep't 1984) ..........................................................................19

*PS Food Corp. v Granville Payne Retail, LLC*,
    45 Misc. 3d. 1216[A], 7 N.Y.S.3d 244, 2014 N.Y. Slip Op 51601[U] (N.Y.
    Sup. 2014), *affd*, 140 A.D.3d 1046 (2d Dep't 2016) .........................................13

*Schwartz v Weiss-Newell*,
    87 Misc. 2d 558 (1976)........................................................................................11

2

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................................6, 9, 10

N.Y. C.P.L.R. 213...............................................................................................................15

Defendant Capital One, N.A. ("Capital One"), erroneously named in the Complaint as "Capital One Financial Corporation d/b/a Capital One Bank d/b/a Capital One," respectfully submits this Memorandum of Law in support of its Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to Dismiss plaintiff Hyatt Equities, LLC's ("Plaintiff" or "Landlord") Complaint[1] (the "Complaint") [Docket No. 1-2] for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiff, a commercial Landlord under the parties' multi-million-dollar Lease[2], brings suit against Tenant Capital One based on a fabricated monetary default purportedly in the amount of $6,255.98.  In its Complaint, Landlord alleges that Capital One breached the Lease by failing to timely remit Rent and then a $6,255.98 cure payment, and it seeks, therefore, to eject Capital One from its valuable leasehold premises located at Grand Central Station.

According to the Complaint and the documents referenced therein, Landlord served a default notice, and thereafter Capital One remitted a cure payment that Landlord alleges was deficient by $6,255.98, thereby failing to "fully" cure an Additional Rent Payment known as a Tax Equivalency Payment that Landlord claimed was due.  That notice, however, is defective as a matter of law because it names the wrong tenant and it failed to identify with any specificity as to how the amount of the Tax Equivalency Payment allegedly due was calculated.  In fact, and further defeating the allegations of the Complaint, the express terms of the Lease provide that Capital One

---

[1] A true and correct copy of the Complaint in this matter is attached as Exhibit 1 to the accompanying Declaration of James Perkins, dated September 7, 2020 (the "Perkins Decl.").

[2] Unless otherwise defined, capitalized terms have the meaning given to them in the lease (the "Lease") that is the subject of the dispute herein. A true and correct copy of the Lease is attached as Exhibit 2 to the Perkins Decl.; Capital One's notice of exercise of an extension of the term thereof to January 31, 2023 (the "Lease Extension"), is attached as Exhibit 3 to that Declaration.

is to pay the Tax Equivalency Payment in equal monthly installments over the course of a calendar year, not in a lump sum as assumed in the Complaint and demanded by Landlord in the default notice.

Moreover, as Landlord has not challenged Tenant's method of calculation and payment of the amount of Fixed Rent and Tax Equivalency Payment due each month pursuant to the Lease since at least 2006, Landlord's claim is barred by the statute of limitations.  Landlord's claim, which hinges on a different calculation and method of payment, accrued back in 2006, and Plaintiff's claims are now time-barred.  Even if the Tax Equivalency Payment calculation changed (as Landlord might allege), the Lease expressly provides that Landlord must give prior notice to Capital One, and since no such notice is alleged (or was given), Landlord has failed to satisfy a condition precedent to any alleged alteration of such Payment or its calculation.

Finally, because the amount in dispute ($6,255.98) is immaterial in comparison to the Lease's annual Rent, and the valuable leasehold at issue, New York law disfavors termination in such tenuous circumstances, and Plaintiff's claims are not sustainable on this basis as well. Because each of Landlord's claims rely on a purportedly uncured $6,255.98 payment that was never due under the Lease's plain language, as a matter of law, the Complaint is meritless, and dismissal is proper.

## FACTUAL BACKGROUND

## I.   ALLEGATIONS OF THE COMPLAINT

Plaintiff alleges in its Complaint that Plaintiff, as Landlord, and Capital One, as Tenant, are parties to a Lease for approximately 6,700 square feet of commercial space in the building commonly known as the hotel Grand Hyatt New York, located at 109 East 42nd Street, New York,

New York.  [Complaint, Docket No. 1-2, ¶¶ 4-8].[3]   Under the Lease, Capital One is required to

pay Fixed Rent in equal monthly installments, in advance, on the first day of each month.  *Id*., ¶ 9.

Fixed Rent is set forth in Schedule B to the Lease.  Perkins Decl., Exhibit 2, Exhibit B thereto.

Capital One must also pay all other sums of money ("Additional Charges") "as shall become due

and payable." *Id*., ¶ 10.  An Additional Charge that Capital One must pay is its proportionate share

of the Tax Equivalency Payment (as defined in the Lease) in equal monthly installments "in the

same manner and at the same time as Fixed Rent."  *Id*., ¶ 11.

Should Capital One default in the payment of Fixed Rent or Additional Charges, and should

such default continue for "ten (10) days after notice thereof from Landlord," then Landlord may

notify Tenant of its intent to end the Lease's term "at the expiration of five days from the date of

service of such notice of intention," and upon such expiration the Lease "and the term and estate

hereby granted . . . shall terminate."  *Id*., ¶ 12.

---

[3] While a court must generally limit itself to the facts alleged in the complaint in considering a motion to dismiss, *Cityside Archives, Ltd. v. Weiss,* No. 1:18-CV-5077-GHW, 2020 WL 3972310, at *3 (S.D.N.Y. July 13, 2020), this Court may also consider documents relied upon by the plaintiff if they are "integral to the complaint," such that the plaintiff relies heavily on the documents' terms and effect. *Id.; Lopez v. Adidas Am., Inc.,* No. 19-CV-7631 (LJL), 2020 WL 2539116, at *6 (S.D.N.Y. May 19, 2020) ("Furthermore, without converting a motion to dismiss into one for summary judgment, courts may consider documents that are "'integral' to the complaint, even where those documents have not been attached as an exhibit or incorporated by reference"). Indeed, Courts in this Circuit have long held that a complaint is deemed to include any written instrument attached to it as an exhibit "or any statements or documents incorporated in it by reference," and may consider documents incorporated in a complaint by reference on a Rule 12(b)(6) motion "without converting it to a motion for summary judgment." *Jiajia Luo v. Sogou, Inc.,* No. 19-CV-230 (LJL), 2020 WL 3051019, at *1 (S.D.N.Y. June 8, 2020); *see also Shetty v. Trivago N.V.*, 796 F. App'x 31, 34 (2d Cir. 2019) (in affirming motion to dismiss, Court considered transcripts of earnings calls which "Complaint relies upon and quotes heavily"); *DPC New York, Inc. v. Scottsdale Ins. Co*., No. 19 CIV. 1743 (PGG), 2020 WL 2555241, at *2 (S.D.N.Y. May 19, 2020) (on motion to dismiss, Court considered insurance policy referenced throughout complaint but not attached as exhibit).   Here, Plaintiff relies heavily on the Lease, the Default Notice and the Termination Notice in support of its claims and they are integral to the Complaint.  Therefore, Capital One respectfully requests that the Court consider these documents attached to the Perkins Declaration (but which were not attached to Plaintiff's Complaint) in support of Capital One's Motion to Dismiss.

Landlord further alleges that Capital One breached the Lease by failing to pay Landlord "the total amount of Fixed Rent and Additional [Charges] due and owing to Landlord as of May 11, 2020, in the total amount of $111,237.24 (the "Rent Arrears"). [Complaint, Docket No. 1-2, ¶ 13].[4]   As alleged in the Complaint, Landlord served Capital One a "Notice of Default" dated May 11, 2020 (the "Default Notice") requiring Capital One to cure the alleged default by paying the Rent Arrears on or before May 26, 2020. *Id.*, ¶ 14.[5]   Landlord next alleges that on May 26, 2020, Tenant only made a partial payment of Rent Arrears in the amount of $104,981.26, and thus failed to cure Capital One's Lease default as asserted in the Default Notice. *Id.*, ¶ 15. Therefore, based on Landlord's allegations, the purportedly deficient amount of Capital One's Rent Arrears payment totals just $6,255.98 ($111,237.24—104,981.26).

Landlord further alleges that on or about May 28, 2020, it gave Capital One notice that the Rent Arrears were not paid in full, and informed Capital One that the Lease would terminate on June 8, 2020 ("Termination Date") as set forth in a "Five (5) Day Notice of Termination" or "Notice of Termination" (the "Termination Notice"). [Complaint, Docket No. 1-2, ¶ 17].[6] Landlord alleges that Capital One has not tendered "any further payments to Landlord," that the "Rent Arrears remains past due," that Tenant has not paid any "Additional Charges due and owing," and that Tenant continues to occupy the Premises without Landlord's consent. *Id.*, ¶¶ 18-

---

[4] In support of its Breach of Lease claim, Plaintiff also alleges that Capital One failed to pay unspecified Rent Arrears "and other amounts of Fixed Rent and Additional Charges which became due under the Lease prior to the Termination Date on June 8, 2020." *Id.*, ¶ 29.

[5] A copy of the Default Notice purportedly sent to Capital One is attached to the Perkins Decl. as Exhibit 4.

[6] A copy of the Termination Notice purportedly sent to Capital One is attached to the Perkins Decl. as Exhibit 5.

20.     Landlord brings claims against Capital One for Ejectment, Breach of Lease, Use and Occupancy, and Attorneys' Fees. *Id*., ¶¶ 21-42.

## II.     LEASE PROVISIONS GOVERNING PLAINTIFF'S ALLEGATIONS

The Lease provides that the Fixed Rent shall be payable in equal monthly installments according to a fixed schedule:

> 1.04(a).    The rents shall be and consist of (a) fixed rent (herein called "Fixed Rent") at the rate per annum set forth on Exhibit B annexed hereto and made a part hereof, ***which shall be payable*** commencing on the Commencement Date ***and thereafter in equal monthly installments in advance on the first day of each and every calendar month*** during the term of this lease. . . .

Perkins Decl., Exhibit 2, ¶ 1.04(a) (emphasis added).  Pursuant to the Lease Extension, the amount of Fixed Rent in May 2020, remained at One Million Two Hundred Forty-Four Thousand Four Hundred Eighty-Five Dollars ($1,244,485.00) per year, or $103,707.08 per month.  *See* Perkins Decl., Exhibit 2, Exhibit B thereto and Lease Extension (Exhibit 3).

Likewise, any Tax Equivalency Payment shall be payable in equal monthly installments "in the same manner and the same time" as Fixed Rent, based on Landlord's advance notice:

> (b) If the Tax Equivalency Fee for any Tax Year, any part of which shall occur during the term of this Leas, shall exceed the Base Tax Equivalency Amount, Tenant shall pay for such Tax Year an amount equal to Tenant's Proportionate Share of the excess ("Tax Equivalency Payment").  ***The Tax Equivalency Payment shall be payable in equal monthly installments in the same manner and the same time as Fixed Rent based on a bill for such Tax Equivalency Payment submitted by Landlord to Tenant setting forth in reasonable detail the computation thereof***.

Perkins Decl., Exhibit 2, ¶ 3.01(b) (emphasis added).  As set forth in this provision, the Lease provides that before any adjustment to Capital One's Tax Equivalency Payment is effective, Landlord must send Capital One a notice specifying and providing the basis for the change in

"reasonable detail."  The only Additional Rent periodically due and alleged to be due is the Tax Equivalency Payment.

The Complaint does not allege that Landlord sent any notice to Capital One regarding any change in the Fixed Rent or any change in the Tax Equivalency Payment that would prompt a chance in these amounts at least since the Lease Extension in March 2018.

## ARGUMENT

## I.   APPLICABLE LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege enough facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 544 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions…[the] factual allegations must be enough to raise a right to relief above the speculative level." *Id.,* 550 U.S. at 544 (citation and internal quotation marks omitted).

The Second Circuit has stated that *Twombly* "require[s] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007).  In other words, *Twombly* "require[s] enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible." *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly,* 550 U.S. at 544).

The "plausibility standard" is guided by "[t]wo working principles."  *Mohawk v. William Floyd Sch. Dist.,* 2014 U.S. Dist. LEXIS 27621 at *4 (E.D.N.Y. 2014); *citing Iqbal,* 556 U.S. at 678.  First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to

legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id., citing Iqbal,* 556 U.S. at 678.  Second, only a complaint that states a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. *Id.*

The Complaint fails to allege sufficient facts to establish any plausible cause of action. Accordingly, and as set forth below, the Complaint fails to state a claim upon which relief can be granted and it should be dismissed in its entirety.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF LEASE

To survive a motion to dismiss for a breach of contract claim under New York law, the complaint must allege facts which show (1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of the contract by defendant and (4) damages. *Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13 CIV. 3956, 2014 WL 837050, at *2 (S.D.N.Y. Mar. 3, 2014).  "Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim."  *Id.*

The Complaint fails to plead breach of the Lease because, (1) Landlord's Default Notice was defective, invalid under New York law, and therefore cannot serve as a basis for any breach of the Lease; (2) Landlord ignores the Lease's clear and unambiguous language which provides that the Tax Equivalency Payment is due in "equal monthly installments," not all at once for any calendar year which the Complaint assumes; (3) even if Capital One somehow miscalculated the Tax Equivalency Payment, the statute of limitations bars Landlord's claims as such calculation has existed well before the six year statue for contracts; and (4) even if the Tax Equivalency Payment changed at any point prior to May 2020,  Landlord fails to allege—and cannot allege—that it provided Capital One with the required notice setting forth in reasonable detail the computation thereof, as required under Section 3.01(b) of the Lease.

**A.      Landlord's Default Notice is Materially Defective
<u>And, Therefore, Invalid Under New York Law.</u>**

The purpose of a notice of default "is to specifically apprise the tenant of claimed defaults in its obligations under the lease and of the forfeiture and termination of the lease if the claimed default is not cured within a set period of time" *Filmtrucks, Inc. v Express Indus. & Term. Corp*., 127 A.D.2d 509, 510 (1st Dep't 1987) (finding plaintiff's notice to cure too ambiguous to be proper notice).  A notice of default must set forth sufficient facts to establish grounds for the tenant's eviction and inform the tenant as to how "the tenant violated the lease, as well as the conduct required to prevent eviction." *496 Broadway Realty v Kyung Sik Kim*, 18 Misc 3d 1119[A], 2008 NY Slip Op 50139[U] (Civ. Ct, New York County 2008). Indeed, any default notice must inform the tenant "unequivocally" how it has violated the lease. *200 W. 58th St., LLC v Little Egypt Corp*., 7 Misc 3d 1017[A], 2005 NY Slip Op 50640[U] (Civ. Ct., New York Cnty. 2005) (holding that insufficiently alleged lease default invalidates the entire notice, even if it sufficiently alleges another lease default). If the alleged defaults include unpaid rent, a proper demand must

> fairly afford the tenant, at least, actual notice of the alleged amount due and of the period for which such claim is made. At a minimum, the landlord or his agent should clearly inform the tenant of the particular period for which a rent payment is allegedly in default and of the approximate good faith sum of rent assertedly due for each such period.

*542 Holding Corp. v Prince Fashions, Inc.*, 46 A.D.3d 309 (1st Dep't 2007) (finding notice defective due to lack of specificity regarding additional rent requested) (*quoting Schwartz v Weiss-Newell*, 87 Misc 2d 558, 561 (1976)). *Compare 542 Holding Corp.* to *BP 510 Madison LLC v Prosiris Capital Mgt. LLC,* 65 Misc. 3d 1222[A], 2019 NY Slip Op 51782[U] (Civ. Ct., New York Cnty. 2019) (finding default notice sufficient where landlord had included ledger itemizing arrears).

Here, Landlord's Default Notice did not supply Capital One with sufficient facts to establish [Plaintiff's] grounds for eviction, nor did it provide Capital One with "the minimum" required under New York law as the Default Notice did not "clearly inform [Capital One] of the particular period for which a rent payment is allegedly in default." This is because while the Default Notice does say that Capital One owes Fixed Rent and the Tax Equivalency Payment for the month of May 2020, and it fails to provide any information as to *how* Landlord calculated the Tax Equivalency Payment that was purportedly due—especially given that Capital One has remitted the same equal monthly amounts of Tax Equivalency Payment for years, as the Lease provides.

The facts here are strikingly similar to what happened in *542 Holding Corp.* In that case, the New York Appellate Division, First Department considered a notice to cure where the landlord claimed defaults and sought additional rent "without specifying when these sums became due *or when the lease-mandated accountings were allegedly delivered.*" *542 Holding Corp*., 46 A.D.3d at 310 (*emphasis added*). The First Department reasoned, "the motion court correctly determined that [the Notice to Cure] was defective" due to its "fail[ure] to delineate between the base rent and additional rent and/or to specify with particularity when the rent became due," before ultimately holding that "such [a] substantive defect in a notice to cure renders the entire notice deficient." *Id*.

So too here, Landlord's Default Notice fails to apprise Capital One of any information regarding the Tax Equivalency Payment such as (i) when it became due; (ii) how its amount was calculated and/or (iii) the time period for which it covers. Moreover, Landlord does not allege that it ever delivered the required change in computation of the Tax Equivalency Payment to Capital One, if that is what Landlord is alleging. Landlord cannot allege there was a deficiency in Fixed

Rent, as that is set by a Rent Schedule in the Lease and the payments alleged include such amounts. *See* Lease Schedule B.

The Notice of Default is materially defective for the additional reason that it is addressed to the wrong tenant.  The Default Notice (Perkins Decl. Exhibit 4) is addressed to "CAPITAL ONE FINANCIAL CORPORATION d/b/a CAPITAL ONE BANK, d/b/a CAPITAL ONE ("Tenant")", but the successor Tenant under the Lease is Capital One, N.A. (Perkins Decl. Exhibit. 3).  Under New York law, such a notice is fatally defective. *see PS Food Corp. v Granville Payne Retail, LLC*, 45 Misc. 3d. 1216[A], 7 N.Y.S.3d 244, 2014 N.Y. Slip Op 51601[U] (N.Y. Sup. 2014), *affd*, 140 A.D.3d 1046 (2d Dep't 2016)] (predicate notice of default/notice to cure must "specifically apprise the *tenant* of claimed defaults") (*emphasis added*); *496 Broadway Realty v Kyung Sik Kim*, 18 Misc. 3d 1119[A], 856 N.Y.S.2d 498, 2008 NY Slip Op 50139[U] (Civ. Ct. N.Y. County 2008) (notice to cure must "unequivocally and unambiguously inform the *tenant* how it has violated the lease and the conduct required to prevent eviction".) (*emphasis added)*.

For these reasons, Landlord's Default Notice is defective, is invalid under New York law, and cannot serve as a basis for the Breach of Lease claim.

## B. <u>The Breach Claim is Refuted by the Plain Language of the Lease.</u>

The breach of Lease claim is based on its allegations that Capital One failed to pay timely "the total amount of Fixed Rent and Additional due and owing…in the amount of $111,237.24." [Complaint, Docket No. 1-2, ¶¶ 13-14].  According to the Default Notice, Capital One failed to pay timely (i) Fixed Rent in the amount of $103,707.08 and (ii) a Tax Equivalency Payment in the amount of $7,530.16.  Perkins Decl., Ex. 4.  Thus, and according to the Default Notice, the only Additional Rent purportedly overdue was the Tax Equivalency Payment in the amount of $7,530.16.  Perkins Decl., Ex. 4, p. 2.

Based on the Default Notice, Landlord's calculation of the monthly Fixed Rent due May 2020 appears to be correct ($1,244,485.00 ÷ 12 = $103,707.08), and Landlord does not dispute that this amount was covered by Capital One's May 26, 2020, $104,981.26 payment. [Complaint, Docket No. 1-2, ¶ 15].

However, by alleging that the entire $7,530.16 Tax Equivalency Payment was also due in May 2020, Landlord ignores the Lease's unambiguous provisions quoted above that any Tax Equivalency Payment owed by Capital One is "payable in equal monthly installments," not in a lump sum. Therefore, the "equal monthly installment amount" of the Tax Equivalency Payment due in May 2020 was only $627.51 ($7,530.16 ÷ 12 = $627.51). Since Capital One's May 26, 2020 payment of $104,981.26 more than covers both the monthly Fixed Rent ($103,707.08) and the monthly Tax Equivalency Payment ($627.51) due under the Lease, Capital One could not have been in default.

Where, like here, a written agreement's plain language contradicts a plaintiff's claim that the defendant breached it, dismissal of the complaint is warranted. *See Perks v. TD Bank, N.A.*, No. 18-CV-11176 (VEC), 2020 WL 1272246, at *2 (S.D.N.Y. Mar. 17, 2020) ("On a motion to dismiss, the Court may dismiss a breach of contract claim for failure to state a claim if the 'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach.") (*citing Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156-58 (2d Cir. 2016)); *see also Owolabi v Bank of Am., NA,* 2019 U.S. Dist. LEXIS 19368, at *6 (S.D.N.Y. Feb. 6, 2019) (dismissing plaintiff's breach of contract claims because "the contract contradicts Plaintiff's allegations").

Capital One fulfilled its obligations under the Lease by remitting the proper monthly amount of Fixed Rent and any Tax Equivalency Payment. Landlord's breach of Lease claim

ignores the basic Lease terms that allow Capital One to pay any Tax Equivalency Payment in "equal monthly installments," rather than in one lump sum, and on this basis the claim should be dismissed.

### C.       The Statute of Limitations Bars Plaintiff's Rent Claim.

As set forth above, Landlord's rent claim is based on its allegations that Capital One failed to pay timely "the total amount of Fixed Rent and Additional due and owing…in the amount of $111,237.24. [Complaint, Docket No. 1-2, ¶¶ 13-14].  According to the Default Notice, Capital One failed to pay timely (i) Fixed Rent in the amount of $103,707.08 and (ii) a Tax Equivalency Payment in the amount of $7,530.16.  Perkins Decl., Ex. 4.  As discussed, the only Additional Rent purportedly overdue then was the Tax Equivalency Payment in the amount of $7,530.16 [Perkins Decl., Ex. 4, p. 2.], but Landlord does not dispute that Capital One made a $104,981.26 payment on May 26, 2020 [Complaint, Docket No. 1-2, ¶ 15].   Even assuming Landlord was correct that the lump sum Tax Equivalency Payment for the entire year was due (which it was not) as opposed to a monthly installment, Landlord's claim is barred under the statute of limitations for contracts as it accepted Rent and the Tax Equivalency Payment on an installment basis for over the last six years.  *See* Civ. Pr. Law and Rules 213; *K-Bay Plaza, LLC v Kmart Corp.*, 132 A.D.3d 584, 588 (1st Dep't 2015).

As the Complaint alleges, Capital One had been the Tenant since 2006.  [Complaint, ¶ 7]. Capital One paid Fixed Rent and the Tax Equivalency Payment in an equal monthly installment each month for the last fourteen (14) years.  Thus, Landlord's claim that the Tax Equivalency Payment was due in a lump sum, even assuming it was a breach of Lease, accrued in 2006. Landlord does not and cannot allege that it acted previously on any alleged prior default in Tenant's calculation or payment using this method.  Landlord's claim is, therefore, time-barred.

Under New York Law, a claim for breach of contract based on an "allegedly erroneous computation of rent accrues upon the first use of that computational methodology, and the statute of limitations does not begin to run anew each time the same formula is used." *K-Bay Plaza,* 132 A.D.3d at 588; *see also Goldman Copeland Assoc. v Goodstein Bros. & Co.* 268 A.D.2d 370, 371 (1st Dep't 2000) (holding that claim for breach of contract based on allegedly erroneous computation of rent accrues upon first use of that computational methodology). Such a claim is time-barred where "(1) [the complaining party] does not file his complaint within six years after he obtained constructive knowledge of the method of computation and (2) the method of computation at issue was continuously applied during that time period" *J.C. Penney Corp., Inc. v Carousel Ctr. Co., L.P.* 635 F Supp. 2d. 126 (N.D.N.Y. 2008) (applying New York law).

New York courts have previously dismissed similar claims for this reason. In *Goldman Copeland*, a tenant brought a claim against his landlord arising out of an escalation clause. In dismissing, the Appellate Division, First Department said:

> It is undisputed that the landlord gave the tenant detailed yearly… escalation statements for the years in question, which were paid by the tenant without protest. Since such statements consistently used the same formula in determining the escalation, the tenant's overcharge claim accrued upon its receipt of the first statement almost 12 years before it commenced this action. At that time it had all of the information it needed to contest the manner in which the landlord computed the escalation.

*Goldman Copeland* 268 A.D.2d at 371; [7] *see also K-Bay Plaza,* 132 A.D.3d at 589 (dismissing commercial landlord's breach of contract claim for alleged underpayments of rent as time-barred

---

[7] In discussing *Goldman Copeland* in its opinion in *K-Bay Plaza*, 132 A.D.3d at 589, the First Department noted:

> *Goldman Copeland* is a precedent of this Court, and we adhere to it as a matter of stare decisis…While Goldman Copeland concerned a tenant's claim for alleged overcharges…[nothing] suggests that the holding should not apply equally to a landlord's claims for alleged underpayments.

16

because landlord did not file complaint within six years from constructive knowledge of error, and method of computation was continuously applied during that period); *Kaufmann's Carousel, Inc. v Carousel Ctr. Co. LP* 87 A.D.3d 1343 (4th Dep't 2011) (*citing Goldman Copeland* while dismissing tenant's claim for overpayment of its share of landlord's payments in lieu of taxes where landlord "submitted evidence establishing that (the parties) have used 1,238,936 square feet as the denominator in that calculation for more than 12 years and that (the tenant) never objected to the use of that number").

Here, since 2006, Plaintiff has never objected to Capital One's calculation and payment of the Fixed Rent and Tax Equivalency Payment based on a monthly installment method, which Capital One calculated and paid under the unambiguous terms of the Lease without incident until now.  As a result, Plaintiff has had actual knowledge of any purported calculation error in Capital One's payment of rent since 2006, and now, fourteen years later, is time-barred from bringing a claim based on this same calculation and rent payment method.

### D. Even if the Fixed Rent or Tax Equivalency Payment Changed, Landlord Fails to Allege it Gave Capital One Any Notice, As Required by the Lease.

The Lease provides that, during any Renewal Term, Plaintiff must provide to Capital One a Rent Notice regarding any purported change in the Fixed Rent for such Renewal Term.  Perkins Decl., Exhibit 2, ¶ 36.04.  In addition, should the Tax Equivalency Payment change, Landlord is likewise required to notify Capital One in advance of such computation.  *Id.*, ¶ 3.01(b).

As Capital One has consistently paid the Fixed Rent and Tax Equivalency Payment since 2006 without incident, only a change in the amount of Fixed Rent under Schedule B and/or Tax Equivalency Payment could justify Landlord's Default Notice and support its allegation that Capital One's May 26, 2020 payment was somehow deficient.  Since Landlord does not, and cannot, allege that it has provided Capital One with any notice of a Fixed Rent increase during the

Renewal Term or a change in the Tax Equivalency Payment, Landlord has failed to satisfy an essential condition precedent to claiming these amounts are now due under the Lease.  As a result, Landlord's failure to allege that the required notices increasing the amount of Fixed Rent or Tax Equivalency Payment due under the Lease is fatal to its breach of contract claim.

## II.    EVEN ASSUMING BREACH, TERMINATING THE LEASE IS NOT JUSTIFIED UNDER NEW YORK LAW SINCE ANY ALLEGED BREACH IS IMMATERIAL

It is well-settled under New York law that in order to justify termination, "a breach must be ... so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Sinco, Inc. v. Metro-N. Commuter R. Co.*, 133 F. Supp. 2d 308, 311 (S.D.N.Y. 2001).  Termination is an "extraordinary remedy" to be permitted only when the breach goes to "the root of the agreement." *Id*.   In New York, the termination of a lease "is usually treated with some degree of leniency.  Violations must be substantial in order to justify a forfeiture." *In re Royal Yarn Dyeing Corp*., 114 B.R. 852, 856 (Bankr. E.D.N.Y. 1990); *Harar Realty Corp. v. Michlin & Hill, Inc*., 86 A.D.2d 182, 188 (1982) ("As a general rule, the law will not sanction a forfeiture of possession where no substantial injury occurs or where a mere technical breach of the lease is involved"); *see also Fifty States Mgt. Corp. v Pioneer Auto Parks, Inc.,* 46 N.Y.2d 573 (1979) ("It is true that equity will often intervene to prevent a substantial forfeiture occasioned by a trivial…breach"); *Metropolitan Transp. Auth. v Cosmopolitan Aviation Corp.,* 99 A.D.2d 767, 768 (2d Dep't 1984) ("equity abhors forfeitures of valuable leasehold interests").

According to Landlord's allegations, the total amount of Rent Arrears Capital One purportedly failed to timely remit totals $111,237.24.   [Complaint, Docket No. 1-2, ¶ 13]. Landlord further alleges and admits, however, that Capital One made a "partial payment of the Rent Arrears" in the amount of $104,981.26 on May 26, 2020, the purported "expiration of the Default Notice." *Id*., ¶¶ 14-15.  Thus, Landlord alleges that its Breach of Lease claim is based on

Capital One's purported failure to timely remit a mere **6,255.98**.  Since the Lease's annual Fixed Rent exceeds well over a million dollars (Perkins Decl., Exhibit 2, Exhibit B thereto), and there remains approximately 2.5 more years left on the Lease's current term, the amount upon which Landlord bases its Breach of Lease claim is immaterial and therefore insufficient under New York law to justify termination of the Lease.

### III.   LANDLORD'S REMAINING CLAIMS SHOULD LIKEWISE BE DISMISSED

In addition to its claim for breach of the Lease, Landlord also asserts, based on that alleged breach, claims for Ejectment, Use and Occupancy, and for Attorney's Fees. Because its Breach of Lease claim is properly dismissed (*see supra*), these remaining claims, which all flow from that alleged breach, should likewise be dismissed.  *See Berkowitz v Christie's Inc.,* 2017 N.Y. Slip Op 32246[U], *5-6 (Sup Ct, NY County 2017) (dismissing multiple claims made by plaintiff for "allege[ing] no facts independent of the fact[s] supporting their breach of contract claim[]." *quoting Jeffers v. American Univ. of Antigua*, 125 A.D.3d 440, 443 (1st Dep't 2015); *see also* (*Benham v eCommission Solutions, LLC,* 118 AD3d 605, 607 (1st Dep't 2014) (plaintiffs' additional claims are "indistinguishable from [their] . . . claim[s] for breach of contract, and must be dismissed").

## **CONCLUSION**

Based on the foregoing, Capital One, N.A. respectfully request that the Court grant its Fed.

R. Civ. Pr. Rule 12(b)(6) motion and dismiss the Complaint in its entirety and grant such other and

further relief as this Court may deem just and proper.

Dated:  New York, New York
        September 7, 2020

GREENBERG TRAURIG, LLP

By:   ____/s/ James W. Perkins_____
        James W. Perkins
        Cara Mittleman Kelly
        Adam Kirschbaum

200 Park Avenue
New York, New York 10166
(212) 801-9200
perkinsj@gtlaw.com


*Attorneys for Defendant Capital One, N.A.*
